JACQUELINE PAULSEN, APPELLANT, V. STATE OF NEBRASKA,
APPELLEE.

541 N.W.2d 636

Filed January 12, 1996.   No. S-95-428.

Jeffrey A. Silver for appellant.

Jill Gradwohl Schroeder, Special Assistant Attorney General, and Thomas B. Wood, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

Jacqueline Paulsen appeals from a judgment entered by the Nebraska Workers' Compensation Court. The trial court held that Paulsen was entitled to a limited amount of benefits as the result of a work–related injury, but the court refused to characterize Paulsen as permanently disabled. Paulsen appealed to a workers' compensation review panel, claiming that she had suffered a temporary total disability extending beyond the date of the award and/or a permanent injury. The review panel

affirmed the trial court's decision, and Paulsen appeals.

## SCOPE OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court award when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there was not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48-185 (Reissue 1993).

## FACTS

Paulsen was employed by the State of Nebraska as a nursing assistant at the Thomas Fitzgerald Veterans Home from October 26, 1992, until April 4, 1994. Her duties at the facility included dressing patients, assisting patients in moving throughout the facility, and lifting patients out of and into their beds.

According to Paulsen, on March 6, 1993, she and a coworker were lifting a 140- to 145-pound amputee into a bathroom chair when the patient suddenly jerked, knocking the workers down. After this incident, Paulsen considered herself to be uninjured and went on with her daily duties. Shortly thereafter, Paulsen and a coworker were attempting to place a patient into bed when the patient suddenly twisted Paulsen behind him in such a manner that Paulsen was thrown to the floor. Following this incident, Paulsen proceeded with her duties. However, within approximately 10 minutes of the second incident, she collapsed while walking down a corridor. Paulsen testified that she was suddenly overcome with pain throughout her entire body and compared the incident to having convulsions. She stated that the pain was in her lower back, through her left hip, and from her neck through her shoulders. Paulsen testified that the pain she was experiencing in her lower back at the time of trial was similar to that she felt the day after the incidents.

Following the March 6 incidents, Paulsen was treated by Dr. Edward Montanez for general pain symptoms in the thoracic and cervical areas and in her left shoulder. An x-ray examination of the lumbar area of Paulsen's spine revealed no abnormalities. Montanez instructed Paulsen that she could

return to work on March 15, 1993, with certain limitations on the type of work she could perform for 10 days. Shortly thereafter, a urinalysis report revealed that Paulsen was pregnant. No further x rays were permitted, and Paulsen was required to forgo pain–killing medication. Montanez agreed with Paulsen's suggestion that she see a chiropractor to facilitate pain relief until the end of her pregnancy. Thereafter, for reasons unrelated to her work, Paulsen left her employment with the veterans home and moved to California. In May 1993, Paulsen had a miscarriage.

After the hearing, the trial court found that Paulsen had suffered temporary total disability for a work–related injury and was entitled to compensation for medical expenses, hospital expenses, and lost wages during the period of March 7 through 31, 1993, a period of $3^4/_7$ weeks. The court held that Paulsen failed to prove she had sustained an additional temporary total disability or any permanent disability after March 31 as a result of the March 6 incidents.

On appeal, the workers' compensation review panel affirmed the trial court's decision. Paulsen appealed to the Nebraska Court of Appeals, and we removed the appeal to this court under the authority granted to us by Neb. Rev. Stat. § 24–1106(3) (Cum. Supp. 1994) to regulate the caseloads of the appellate courts of this state.

## ASSIGNMENTS OF ERROR

Paulsen makes nine assignments of error which we summarize as follows: The trial court's rulings concerning exhibits 3 and 4 were contrary to law; the court erred in considering Paulsen's pregnancy; the court was clearly wrong in its findings, which were contrary to the law; and the court erred in relying upon Dr. Alan Fruin's opinion to conclude that Paulsen failed to prove that she had sustained any total or permanent disability after March 31, 1993.

## ANALYSIS

We first address the trial court's exclusion of exhibits 3 and 4. At trial, the State objected to Paulsen's exhibits 3 and 4, which consisted of medical reports, for the reason that the exhibits were not listed on her pretrial disclosures. The court

ultimately received only the fourth page of exhibit 3 and the first page of exhibit 4 and sustained the objections to the remainder of exhibits 3 and 4. In our review of an error directed at the admission or exclusion of evidence, we note that the Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence. See, Neb. Rev. Stat. § 48-168 (Reissue 1993); *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991). Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Harpham v. General Cas. Co.*, 232 Neb. 568, 441 N.W.2d 600 (1989). Therefore, our standard for review of an assigned error directed at the exclusion or admission of evidence is one of abuse of discretion.

Paulsen argues that the trial court should not have sustained the State's objection on the grounds that exhibits 3 and 4 were not included in Paulsen's pretrial disclosures. Paulsen claims that if the State offered one page of both exhibits 3 and 4, Neb. Rev. Stat. § 27-106 (Reissue 1989) requires that Paulsen be permitted to offer the balance of those two exhibits. This argument fails because Paulsen, not the State, offered exhibits 3 and 4.

We next consider whether the court abused its discretion in excluding the exhibits. A judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right or denying a just result in matters submitted for disposition through a judicial system. See *Stewart v. Amigo's Restaurant*, 240 Neb. 53, 480 N.W.2d 211 (1992). We therefore examine the contents of exhibits 3 and 4.

Exhibit 3 contained the notes of Dr. Montanez. The notes reflect Paulsen's complaints of persistent thoracic, lumbar, and shoulder pain since her injury at the veterans home. Montanez noted discomfort throughout her neck and upper back and diagnosed her as having "[t]horacocervical muscle strain with diminished range of motion secondary to pain" and that Paulsen was experiencing continued back pain. On April 2, 1993, he noted that Paulsen was experiencing increased pain on the left

side of her neck and in her left shoulder girdle, with some involvement of the left arm and upper thoracic region of her back.

The first physical capacity report noted "[t]horaco-cervical muscle strain" and imposed work restrictions for "10 days from 03-15-93." The second physical capacity report, dated April 2, 1993, reported a diagnosis of persistent pain in the left shoulder, left arm, neck, and back and that Paulsen would be able to return to work in 3 to 4 weeks.

Exhibit 4 consisted of reports from a physical therapist to Dr. Montanez. One report noted that Paulsen was seen for evaluation and treatment of cervical-thoracic strain; that Paulsen stated she had injured her neck and upper back on March 6, 1993; and that she complained of left shoulder pain and dislocation sensations. Paulsen gave a past medical history of having her shoulder dislocated approximately 9 years prior. She was treated with electrical muscle stimulation to the cervical and upper thoracic musculature, therapeutic exercise, and the application of ice to the left shoulder. Another report indicated Paulsen stated that she was experiencing uncomfortable tightness in her shoulders and that her shoulder had recently dislocated.

The trial court found that Paulsen's complaints related to the March 6, 1993, incidents were in the cervical and thoracic areas rather than the low-back area. Exhibits 3 and 4 would have supported the trial court's findings that Paulsen was complaining of cervical-thoracic strain in her neck, upper back, and left shoulder. Although the reports note that Paulsen mentioned cervical lumbar pain, the treatment given was for cervical and upper thoracic musculature and the left shoulder. The failure of the trial court to admit the entire contents of exhibits 3 and 4 was not an abuse of discretion by the trial court. The exclusion of exhibits 3 and 4 was not prejudicial to Paulsen. As a general rule, to constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about such evidence admitted or excluded. *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994).

Paulsen next argues that the trial court erred in considering

her pregnancy. This argument has no merit. The court found that the pain localized in Paulsen's lower back after her miscarriage in May 1993. This finding merely established the date on which the court determined the low-back pain occurred.

Paulsen also argues that the trial court erred in accepting the opinion of Dr. Fruin. Fruin and Dr. David Dubin disagreed regarding Paulsen's condition and prognosis.

Paulsen saw Dr. Dubin, a family practice physician, after she moved to California. In a July 5, 1994, report, Dubin stated that he saw Paulsen in June 1993 regarding her injury of March 6. Dubin had ordered a "CT scan." The report of the CT scan stated in part: "IMPRESSION: AT L2-3 ASYMMETRIC DIS[K] BULGE WITHOUT SPINAL STENOSIS OR NEURAL ENTRAPMENT. SMALL LEFT PARACENTRAL DIS[K] HERNIATION EXTENDING MINIMALLY INTO THE LEFT LATERAL RECESS. THIS TIME NO DEFINITE NERVE ROOT ENTRAPMENT OR IMPINGEMENT IS IDENTIFIED. MILD BULGING DIS[K] AT L4-5."

Dr. Dubin opined that Paulsen had a herniated lumbar disk and was currently totally disabled, but not permanently disabled, since this was likely to be "remediable surgically." A second report, dated July 26, 1994, stated that Dubin's opinion of July 5 was based upon his education, training, and experience and was to a reasonable degree of medical probability and that "[t]he accident in question is responsible for [Paulsen's] injuries."

Dr. Fruin's report dated August 30, 1994, was submitted on behalf of the State. Fruin saw Paulsen in an independent medical examination on August 29. Prior to the exam, Fruin reviewed Paulsen's medical records and obtained a history from Paulsen, including the fact that she had experienced two lifting incidents at the veterans home in Omaha in March 1993. Paulsen told Fruin that following the lifting incidents, she was walking down the hall at the veterans home when she had an "attack" and that she had experienced these attacks approximately two times per month since the initial attack. Fruin reported that the attacks were characterized by Paulsen "feeling shaky, faint, a warm feeling throughout the body, but the hands and feet feeling cool and sweating all over the body.

She has shortness of breath, throbbing headache, lower lumbar pain, left hand and left leg numbness. The right leg twitches and jerks uncontrollably."

Dr. Fruin reported that there was no particular activity that brought on these attacks, which could happen when Paulsen was resting or doing various activities, and that between these attacks, Paulsen complained of left parascapular and shoulder pain without any radicular pain into her left arm. She also complained of lower lumbar pain with occasional but infrequent radiation of pain into her left leg and told Fruin that the pain in her left leg was more a numbness than true pain and was made worse by sitting.

Dr. Fruin's report stated that Paulsen had one of her "spells" while she was in his office. During the spell, Paulsen seemed hysterical, confused, and somewhat irrational. Fruin made the following comments in his report:

Her diagnosis at the current time would include the following:

a) complaint of left shoulder, left scapular and low back pain without any apparent underlying organic disease.

b) possibility of hysteria, not related to her incident at work at the Veterans Home in March 1993.

c) unlikely possibility of a pheochromocytoma, also unrelated to her incident at work at the Veterans Home in March 1993.

2) I can find no evidence on her examination that any injury was sustained by the lifting inciden[ts] of March 6, 1993.

3) I believe that Ms. Paulsen has reached maximum medical improvement in that she needs no other specific diagnostic studies or therapy related to the incident of March 1993. I do not believe that there is any permanent impairment as a result of the incident.

4) There are no permanent physical restrictions related to the March 6, 1993[,] incident. Any activity restrictions are strictly self–imposed.

5) I would not make any recommendations for future medical treatment other than purely symptomatic relief of her complaints.

6) Based on her examination and the report of the CT scan of her lumbar spine, it is unnecessary for her to undergo any type of surgery on her back and is actually ill-advised at this time for her to have any surgery.

7) If I were her treating physician, I would feel obliged to refer her to a psychiatrist and to a[n] internist with a special interest in endocrinology to evaluate the possibility of her hysteria and pheochromocytoma. If she has either one of these conditions, it would not be related to the March 6, 1993[,] incident, but she should have these problems followed up from a medical point of view.

Paulsen asserts that "[a]s a matter of law, Dr. Dubin's opinion, couched in specific medical terms and supported by an objective, unrefuted CAT Scan should have been considered uncontroverted, and the Review Panel's decision was therefore clearly wrong." Brief for appellant at 25. At trial, Paulsen objected to Dr. Fruin's testimony because his opinion was not based upon a reasonable degree of medical certainty. The State argues that since Fruin's opinion was not offered as the basis of an award, the requirement that the medical opinion be based on a reasonable degree of medical probability is not applicable. We therefore review the criteria for the admission of expert medical opinions.

In *Welke v. City of Ainsworth*, 179 Neb. 496, 504–05, 138 N.W.2d 808, 813 (1965), we stated:

Where the [physician's] testimony gives rise to conflicting inferences of equal degree of probability so that the choice between them is a mere matter of conjecture, a compensation award cannot be sustained. Where, however, the inferences are not equally consistent and the more probable conclusion is that for which the claimant contends, then the claimant sustains his burden of proof on the element involved.

Using *Welke* as a basis, we held in *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991), that medical testimony expressed in terms of "possibly" was not sufficient, but that such testimony couched in terms of "probability" was sufficient. See, *Morton v. Hunt Transp.*, 240 Neb. 63, 480 N.W.2d 217 (1992); *Castro v. Gillette Group,*

*Inc.*, 239 Neb. 895, 479 N.W.2d 460 (1992); *Halbert v. Champion International*, 215 Neb. 200, 337 N.W.2d 764 (1983). "Magic words" indicating that an expert's opinion is based on a reasonable degree of medical certainty or probability are not necessary. See *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d 597 (1991). In *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992), we stated that an expert opinion is to be judged in view of the entirety of the expert's opinion and is not validated or invalidated solely on the basis of the presence or lack of the magic words "reasonable medical certainty." We reaffirmed this standard in *Morton* and stated that the sufficiency of the expert's opinion is judged in the context of the expert's entire statement.

Our cases discussing the sufficiency of expert opinions have been a survey of various characterizations by the claimants' experts as to how certain they are that the claimant's injury was caused by his or her employment. We have held that expert medical testimony based on "could," "may," or "possibly" lacks the definiteness required to meet the claimant's burden to prove causation. See, *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992); *Edmonds v. IBP, inc., supra*. Our well-known preference for the use of the phrases "reasonable degree of medical certainty" or "reasonable degree of probability" is an indication to courts and parties of the necessity that the medical expert opinion must be stated in terms that the trier of fact is not required to guess at the cause of the injury.

Our workers' compensation cases regarding the certainty of the language used by medical experts have focused on the substantive issue of whether the claimant's injuries and disability were caused by conditions of his or her employment. We recognized in *Welke* that to require a greater degree of proof in a workers' compensation case than we required in a tort action would thwart the basic purpose of the workers' compensation statutes. Causation must be proved by a preponderance of the evidence, and the weight of the claimant's evidence must be sufficient to meet this burden. "The rule is well established in this jurisdiction that a workmen's compensation award cannot be based on possibility or

speculation and if an inference favorable to the claimant can only be reached on the basis thereof, then he cannot recover." *Welke v. City of Ainsworth*, 179 Neb. 496, 502, 138 N.W.2d 808, 812 (1965).

The workers' compensation claimant bears the burden to establish a causal relationship between the claimant's alleged injury and his or her employment. See *Brandt v. Leon Plastics, Inc.*, 240 Neb. 517, 483 N.W.2d 523 (1992). We have held that with many types of injuries it is impossible to meet this burden of proof without the use of medical expert testimony. In *Caradori v. Frontier Airlines*, 213 Neb. 513, 516-17, 329 N.W.2d 865, 867 (1983), we stated:

> " 'Where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from the testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries.' The employee must show by competent medical testimony a causal connection between the alleged injury, the employment, and the disability."

We have recognized that medical experts often find it necessary to qualify their medical opinions to clarify the certainty of their opinion.

> In the area of certain disabilities it is impossible for a reputable doctor to testify with absolute certainty that one cause and one cause alone is the reason for the disability. Medical diagnosis is not that exact a science. Even though in most instances a certain result may follow, to be accurate the medical expert hedges by the use of the [word] "probably . . . ."

*Welke v. City of Ainsworth*, 179 Neb. at 502-03, 138 N.W.2d at 812.

In *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981), we noted that the Nebraska Evidence Rules, with reference to testimony by experts, do not require that the expert testify "with reasonable certainty." We stated that the test was whether the specialized knowledge would

assist the trier of fact to understand the evidence or to determine a fact in issue. We referred to the foundational requirements applicable to expert testimony articulated in the Nebraska Evidence Rules, Neb. Rev. Stat. §§ 27–702 and 27–703 (Reissue 1989). *Lane v. State Farm Mut. Automobile Ins. Co., supra.*

Read together, *Welke* and *Lane* outline what is required in the use of medical expert opinion evidence. The witness must qualify as an expert, and the witness' testimony must assist the trier of fact to understand the evidence or determine a fact in issue. The witness must have a factual basis for the opinion, and the testimony must be relevant.

A qualified expert may not testify without adequate basis for his or her opinions concerning the facts of the case on which the expert is testifying. Expert testimony should not be received if it appears that the witness is not in possession of such facts as will enable the expert to express a reasonably accurate conclusion, and where the opinion is based on facts shown not to be true, the opinion lacks probative value. *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995). The opinion must have a sufficient factual basis so that the opinion is not mere conjecture or guess. See *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985). Thus, a trial court may exclude an expert opinion because the expert is not qualified, because there is no proper foundation or factual basis for the opinion, because the testimony would not assist the trier of fact to understand the factual issue, or because the testimony is not relevant.

At trial, Paulsen made a foundational objection to the admission of Dr. Fruin's opinion because Fruin did not say that his opinion was based on a "reasonable degree of medical certainty." Such an objection is not a foundational objection. At trial, Paulsen did not challenge Fruin's qualifications as an expert, nor did she challenge the underlying factual basis for his opinion.

An objection to the opinion of an expert based upon the lack of certainty in the opinion is an objection based upon relevance. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence. Neb. Rev. Stat. § 27–401 (Reissue 1989). "Where the testimony gives rise to conflicting inferences of equal degree of probability so that the choice between them is a mere matter of conjecture, a compensation award cannot be sustained." *Welke v. City of Ainsworth*, 179 Neb. 496, 504, 138 N.W.2d 808, 813 (1965).

Testimony which gives rise to conflicting inferences of equal probability is not relevant. Paulsen did not object to the opinion based on relevance. Therefore, Paulsen failed to raise a proper objection to Fruin's testimony. To preserve a claimed error in admission of evidence, a litigant must make a timely objection which specifies the ground of the objection to the offered evidence. *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992). If the party against whom evidence is offered fails to object to such evidence, that party is considered to have waived whatever objection he or she may have had, and the evidence is in the record for consideration the same as other evidence. See *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995).

Pursuant to § 48–185, an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Shade v. Ayars & Ayars, Inc.*, 247 Neb. 94, 525 N.W.2d 32 (1994). In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994); *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

We find there is sufficient competent evidence to warrant the trial court's order. Dr. Fruin stated that he found no evidence during his examination of Paulsen that any injury was sustained as the result of the lifting incidents of March 6, 1993. Based upon his examination of Paulsen and the CT scan report, Fruin

opined that there was no permanent injury as a result of the incidents and that it was unnecessary and ill-advised for her to have any surgery. Fruin stated that in his opinion, any restrictions on Paulsen's level of activity were self-imposed.

Paulsen also claims that Dr. Dubin's testimony should have been considered uncontroverted because it was based on objective medical evidence (the CT scan) and that, therefore, the trial court was clearly wrong in not adopting Dubin's opinion. This argument is without merit. Two doctors reviewed the CT scan and had different opinions as to its meaning. Triers of fact, including the Nebraska Workers' Compensation Court, are not required to take the opinions of expert witnesses as binding. *Aken v. Nebraska Methodist Hosp., supra.* When the record in a workers' compensation case presents conflicting medical testimony, the appellate court will not substitute its judgment for that of the compensation court. *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991).

Having found Paulsen's assignments of error to be without merit, we affirm the judgment of the Workers' Compensation Court.

AFFIRMED.