IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

BECIROVIC V. WAL-MART STORES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

FADILA BECIROVIC, APPELLANT,
V.
WAL-MART STORES, INC., APPELLEE.

Filed December 17, 2013.    No. A-13-211.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

Edward W. Hasenjager for appellant.

Jennifer S. Caswell, of Ritsema & Lyon, P.C., for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Fadila Becirovic appeals from the order of dismissal of the Nebraska Workers' Compensation Court. The compensation court found that Becirovic's back injury did not arise out of her employment with Wal-Mart Stores, Inc. (Wal-Mart), but, rather, was a natural progression of a preexisting, degenerative condition. We affirm.

## BACKGROUND

Becirovic began working as a janitor at Wal-Mart on August 6, 2001, shortly after she and her family immigrated to the United States from Bosnia in July 2001. Her job included picking up trash bags, putting them into a wheeled cart, and taking them to a larger trash receptacle for disposal. Near the end of one of Becirovic's shifts on March 14, 2010, she lifted what she described as a 40- to 50-pound bag of trash when she "felt something in [her] back" and "couldn't feel [her] leg." Becirovic's husband and a Wal-Mart manager took her to a doctor, who ordered x rays and found that she had no broken bones. Due to Becirovic's back and leg pain, she was unable to continue performing janitorial work, but returned to Wal-Mart on light duty as

a greeter a week after lifting the trash bag. Becirovic recalls working light duty for approximately 3 weeks, after which she permanently stopped working after experiencing sharp stomach pain and tingling in her head during one of her shifts. Becirovic's medical records indicate she continued to work light duty through May 2010.

Becirovic's medical records reflect that prior to the incident on March 14, 2010, she had sought treatment on numerous occasions for low-back pain radiating into her left leg with numbness in her right leg, similar to the symptoms she experienced on March 14. Three years prior to the incident at issue, in March 2007, Becirovic voiced concerns to her doctor about persistent low-back pain radiating to her legs, which pain she had been experiencing for 3 weeks. On November 1, Becirovic sought a full evaluation of the source of her pain at a hospital. Becirovic returned for a followup appointment on December 18, because she continued to experience the same symptoms. A lumbar MRI performed on Becirovic on December 20 revealed that she had mild central canal stenosis and L4-5 disk protrusion contacting an L4 nerve root.

On January 21, 2008, Dr. Angie Rakes evaluated Becirovic for treatment options regarding her low-back and leg pain, which continued to flare up episodically. Dr. Rakes prescribed medication to manage Becirovic's pain and discussed a lumbar epidural steroid injection if the medication did not work. Dr. Rakes saw Becirovic again on February 26, noting that Becirovic's pain was better, although Becirovic experienced an episode of pain in the office.

By April 21, 2009, Becirovic was reporting to her doctor that her low-back pain was becoming more of a nuisance and a worsening issue. Becirovic sought treatment from family physician Dr. Shawn Murdock, who gave her a neurosurgery referral. On August 24, Becirovic sought treatment from Dr. Mikala Albertson, another family physician, for continued back pain. Dr. Albertson's record from that appointment indicates that Becirovic reported she had a prior herniated disk, "and this resolved over time and now intermittently she has flare ups of her back pain." Dr. Albertson also states that the pain "is primarily in the lumbosacral region and radiates down her right leg." Dr. Albertson encouraged Becirovic to take ibuprofen on a more regular basis and prescribed her a muscle relaxant. On February 22, 2010, 3 weeks before Becirovic's incident at Wal-Mart, Dr. Albertson's office notes indicate issues pertaining to depression and anxiety, as well as lumbar back pain. She referred Becirovic to the Nebraska Spine Center for a potential spinal injection to treat her continued back pain.

On March 19, 2010, 5 days after the incident at Wal-Mart, Becirovic returned to Dr. Albertson. Becirovic reported that she continued to have pain and swelling in her right leg and back, but that it had been improving. Dr. Albertson noted Becirovic's appointment with the Nebraska Spine Center was pending.

Becirovic began receiving treatment for her back pain at the Nebraska Spine Center on March 23, 2010. Dr. Alicia Feldman reviewed a lumbar MRI scan taken on that date and determined the MRI film showed multilevel disk degeneration at the L3-4, L4-5, and L5-S1 levels with foraminal stenosis on the right at the L4-5 level, secondary to a foraminal bulge. Dr. Feldman's treatment plan for Becirovic included physical therapy and anti-inflammatories. Dr. Feldman treated Becirovic for her continued pain on April 27 and May 11, and administered an L4-5 transforaminal epidural on May 24. Becirovic returned to Dr. Feldman on June 1, complaining of a "whole multitude of symptoms," including neck pain, headaches, shoulder

pain, abdominal pain, nausea, low-back pain, and right-leg pain. Dr. Feldman did not believe Becirovic's nausea, neck pain, and headaches were secondary to the epidural, and explained that increased back and leg pain sometimes occurs following an injection, but would subside. Dr. Feldman discussed with Becirovic that there were no further nonoperative treatments to offer her and provided a surgical consultation referral.

Dr. John McClellan, an orthopedic surgeon at the Nebraska Spine Center, first saw Becirovic on June 21, 2010, for surgical consultation. Dr. McClellan determined Becirovic demonstrated mild L4-5 degenerative spondylolisthesis, degenerative lumbar scoliosis, foraminal stenosis at L4-5, and radiculopathy in an L5-S1 distribution. Dr. McClellan testified by deposition that spondylolisthesis is a degenerative condition present in a large number of females over the age of 40 (Becirovic was age 50 at the time of trial) and is a form of spinal instability that is known to cause certain types of nerve pain when a vertebra slips forward and catches a nerve. Dr. McClellan ordered a nerve conduction study/EMG, which Dr. Feldman performed on July 21. Dr. McClellan found that the EMG appeared normal.

Dr. McClellan requested that a second epidural injection be administered to Becirovic's lower back at the L5-S1 level, which Dr. Feldman administered on August 18, 2010. Dr. Feldman saw Becirovic again on September 14, and Becirovic reported some mild improvement in pain. Dr. Feldman instructed Becirovic to return to Dr. McClellan for surgical evaluation.

On September 29, 2010, Dr. McClellan ordered another lumbar MRI scan after Becirovic reported that her symptoms had continued to progress in severity. On October 4, Dr. McClellan recommended repeating an L5 selective nerve root block. Dr. McClellan believed that if the nerve root block provided Becirovic with relief from pain, she would be an appropriate candidate for surgery.

Becirovic returned to Dr. Feldman on February 8, 2011, complaining of low-back pain and right-leg pain. Dr. Feldman encouraged Becirovic to exercise and refilled her pain medication. Dr. Feldman saw Becirovic again on May 17, at which time Becirovic opted to be referred to a pain management specialist rather than exploring surgery.

Dr. Feldman referred Becirovic to undergo a functional capacity evaluation performed by a physical therapist, which evaluation was carried out by Neal Wachholtz on September 28, 2011. Wachholtz noted that Becirovic demonstrated findings of inconsistent and submaximal effort during functional testing and that her subjective complaints of pain appeared out of proportion with objective findings of dysfunction. Wachholtz concluded that accurate functional restrictions could not be outlined for Becirovic secondary to her invalid test results, but that based on her limited effort, she has the ability to perform work activities within the light physical demand level. Wachholtz further concluded that safe activity levels for Becirovic are likely somewhat higher.

On December 20, 2011, Becirovic completed a second functional capacity evaluation. According to this evaluation, Becirovic exhibited objective signs of good effort and her subjective complaints correlated well with observed objective signs of difficulty. This functional capacity evaluation concluded that Becirovic's maximum lifting ability ranged from 10 to 25 pounds and that her physical capabilities fall primarily in the ranges of the "light" category.

Becirovic filed a petition for benefits under the Nebraska Workers' Compensation Act on March 12, 2012, seeking compensation for her low-back condition, which she claimed was

caused by lifting the 40- to 50-pound trash bag at Wal-Mart on March 14, 2010. Becirovic requested an independent consultation from Dr. Charles Taylon, a neurosurgeon, regarding the issue of causation. Dr. Taylon evaluated Becirovic on November 12, 2012. Dr. Taylon, relying on Becirovic's medical records, x rays, and MRI films, as well as his physical examination and interaction with Becirovic, diagnosed her with spondylolisthesis and spinal stenosis. Dr. Taylon opined that Becirovic's back condition was acutely exacerbated by lifting the trash bag on March 14, 2010. Dr. Taylon agreed that there were no visible changes in Becirovic's MRI films taken December 2007; March 23, 2010; or September 30, 2010, which in his opinion, however, did not preclude the concept of aggravation.

Wal-Mart requested a medical opinion regarding causation from Dr. McClellan. Dr. McClellan found no acute injury or changes when comparing Becirovic's MRI films taken December 2007; March 23, 2010; or September 30, 2010. Dr. McClellan was unable to say with a reasonable degree of medical certainty that lifting the 40- to 50-pound trash bag dramatically changed Becirovic's back condition. Dr. McClellan was of the opinion that Becirovic's condition was a natural progression of her spondylolisthesis with sciatica.

Trial was held January 8, 2013. Becirovic and her daughter testified at the hearing, and Becirovic's wage history and medical records were offered into evidence. The compensation court also received, without objection by either party, the opinions of Drs. Taylon and McClellan regarding whether Becirovic's preexisting back condition was aggravated when she lifted the trash bag at Wal-Mart on March 14, 2010.

On February 6, 2013, the compensation court entered an order dismissing Becirovic's petition. The compensation court concluded Becirovic had a preexisting condition in her low back that was active and causing her pain in the months leading up to the accident. The court stated it was not convinced that the accident on March 14, 2010, caused Becirovic's current condition, and the court chose to believe Dr. McClellan's opinion over Dr. Taylon's. The compensation court concluded Becirovic failed to meet her burden of proof and, consequently, found she was not entitled to any benefits under the Nebraska Workers' Compensation Act. Becirovic subsequently perfected this appeal.

## ASSIGNMENTS OF ERROR

Becirovic assigns as error, summarized and restated, that the compensation court was clearly wrong when it found that her back injury did not arise out of her employment and that this error was the result of faulty factual determinations, namely (1) the court "ignored" Becirovic's complaints of back pain following an epidural steroid injection, brief for appellant at 19; (2) the court failed to give sufficient weight to Becirovic's testimony that she had not missed work from her preexisting back problems prior to the date of the alleged injury; (3) the court's reliance on MRI films to bolster one expert's opinion over another; and (4) the court's reliance on one expert's causation opinion over the other.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not

sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013). On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013).

In testing the sufficiency of the evidence to support the findings of fact by the workers' compensation court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013).

## ANALYSIS

Becirovic argues that the compensation court erred when it found that her injury did not arise from her employment, but, rather, was a natural progression of her preexisting low-back condition. In reaching this conclusion, the compensation court relied on the medical opinion of Dr. McClellan, Becirovic's MRI films, and the fact that Becirovic's preexisting condition in her lower back was active and causing her pain 3 weeks before the work-related incident.

The determination of causation is, ordinarily, a matter for the trier of fact. *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005). In a workers' compensation case involving a preexisting disease or condition, it is sufficient to show that the injury resulting from an accident arising out of and in the course of employment and the preexisting disease or condition combined to produce disability, or that the employment injury aggravated, accelerated, or inflamed the preexisting condition. *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

However, the Nebraska Workers' Compensation Act does not include recovery for "injury, disability, or death that is the result of a natural progression of any preexisting condition." Neb. Rev. Stat. § 48-151(4) (Reissue 2008). In a workers' compensation case involving a preexisting condition, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

Becirovic claims that the compensation court was clearly wrong in its findings with regard to four specific factual matters, which she claims satisfy her burden to prove causation and support reversal of the court's dismissal of her claim. However, a compensation court's findings of fact have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013). With that standard in mind, our review of these challenged factual findings follow.

*Becirovic's Complaints Following*
*Epidural Steroid Injection.*

On May 24, 2010, Becirovic received an epidural steroid injection from Dr. Feldman for her low-back pain. In her followup appointment on June 1, Dr. Feldman noted that since the

injection, "[Becirovic] has had a whole multitude of symptoms including neck pain, headaches, shoulder pain, abdominal pain, nausea, low back and right leg pain. She denies any new numbness or weakness in the legs." Dr. Feldman further noted that Becirovic "reports increasing back pain . . . located at the base of the spine, continued right leg pain, pain located at the base of the skull which she describes as a headache." The medical record also reflects that Becirovic reported neck and left shoulder pain, and nausea. In considering this evidence, the compensation court stated, "[Becirovic] seemed to argue that this myriad of symptoms of which she complained were related to her epidural steroid injection on May 24, 2010. Dr. Feldman opined the nausea, neck pain, and headaches were not related to the injection." The court goes on to note that Becirovic "was suffering from PTSD related to some prior tragic events that [Becirovic] endured in her former country" and that she had "a long history of bowel and stomach problems."

Becirovic claims that the compensation court's failure to reference the back pain she complained of during this visit with Dr. Feldman "demonstrates that the Court either ignored or overlooked the fact that Dr. Feldman advised [Becirovic] that increasing pain sometimes follows an injection and was optimistic that the pain would soon subside." Brief for appellant at 19. Becirovic appears to be arguing that the compensation court ignored evidence that Becirovic was experiencing pain in her low back. The record does not support such an assertion. The record does not indicate that the trial judge did not believe Becirovic had complaints of pain to her low back; rather, the court concluded it was not causally related to the incident of March 14, 2010. We cannot say that such a factual determination was clearly wrong, based upon our review of the record.

*Preexisting Back Problems Did Not Cause*
*Becirovic to Miss Work Prior to*
*March 14, 2010, Incident.*

Becirovic argues that because she never missed work due to back pain prior to March 14, 2010, the fact that she missed work after that incident is sufficient to prove causation. On this matter, the compensation court stated:

> [Becirovic] further argues that she did not miss work due to back pain prior to the March 14, 2010, accident. It is a compelling argument and not one that is unique to this case. [Becirovic's] argument really does not address the causation element, however. The fact that her pain was worse after the accident does not mean that increase in pain is related to the accident. This is particularly true given the proximity and nature of pain she was having before the accident on March 14, 2010.

The trial judge then refers to Dr. McClellan's opinion where he states, "'I really can't say with certainty that lifting that bag put her on a different level of symptoms, knowing that her symptoms have been increasing consistently from 2006 all the way through when she reported her injury. Even within three weeks of her reported injury, she was having troubles.'" We cannot say that the compensation court was clearly wrong in this determination, particularly when reliance was placed on the opinion of an authorized, treating physician.

*Compensation Court's Reliance*
*on Becirovic's MRI Films.*

Becirovic asserts that the compensation court was wrong to determine that her MRI films supported Dr. McClellan's opinion and undermined Dr. Taylon's opinion. Becirovic claims the MRI films did not support either position. Lumbar MRI scans were taken of Becirovic's spine on December 2007; March 23, 2010; and September 30, 2010. According to both Drs. Taylon and McClellan, there was no definitive difference between any of the MRI films. Dr. McClellan opined the MRI studies showed no evidence of acute change. In his deposition testimony, he stated that the "imaging studies were most significant for . . . the spondylolisthesis," which is "a degenerative condition." Dr. Derek Burdeny also reviewed the three lumbar MRI films taken of Becirovic's spine, and he agreed that the MRI films did not reflect acute injury. According to Dr. Burdeny, the findings in the MRI scans were degenerative in nature without features of acute injury.

The compensation court stated that Dr. McClellan's opinion was "supported by the objective medical evidence as well," and then goes on to discuss the MRI films. The court acknowledged that both Drs. McClellan and Taylon reviewed the MRI films from 2007 and 2010 and that they were in agreement that when comparing them, "no acute changes could be identified, although Dr. Taylon did not rule out micro changes that would not be reflected on the MRI films." The court goes on to state, "The absence of change on the MRI film undermines [Becirovic's] argument that it was the accident on March 14, 2010, that led to her increase in symptoms and debilitating pain."

As the trier of fact, the trial judge can determine which, if any, expert witnesses to believe. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013). We cannot say that the compensation court's decision to rely on the opinion of Dr. McClellan and of Dr. Burdeny and their interpretation of the MRI films was clearly wrong.

*Relying on One Expert's Causation*
*Opinion Over Another.*

Becirovic argues that Dr. McClellan's opinion regarding causation is unreliable because his testimony about the facts on which he based his opinion is conflicting, inaccurate, inconsistent, and "simply not true." Brief for appellant at 19. Becirovic takes issue with Dr. McClellan's interpretation of Becirovic's pain history as described in her medical records. Essentially, Becirovic objects to the foundation on which Dr. McClellan based his opinion. Becirovic cites to *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996), in support of her argument. The Nebraska Supreme Court in *Paulsen* stated:

A qualified expert may not testify without adequate basis for his or her opinions concerning the facts of the case on which the expert is testifying. Expert testimony should not be received if it appears that the witness is not in possession of such facts as will enable the expert to express a reasonably accurate conclusion, and where the opinion is based on facts shown not to be true, the opinion lacks probative value.

249 Neb. at 123, 541 N.W.2d at 644.

A trial court may exclude an expert opinion because there is no proper foundation or factual basis for the opinion. See *id*. However, to preserve a claimed error in admission of

evidence, a litigant must make a timely objection which specifies the ground of the objection to the offered evidence. *Id.* If the party against whom the evidence is offered fails to object to such evidence, that party is considered to have waived whatever objection he or she may have had, and the evidence is in the record for consideration the same as other evidence. *Id.* Becirovic did not object to the admission of Dr. McClellan's opinion on the basis of foundation, and thus she cannot now claim the compensation court erred by accepting his opinion on the basis of its foundation.

Becirovic also challenges the compensation court's determination that Dr. McClellan was more objective than Dr. Taylon. In its order of dismissal, the compensation court stated the following:

> Not lost on the Court is the objectivity of Dr. McClellan. He was one of [Becirovic's] treating physicians. He actually had a monetary incentive to provide a favorable opinion for [her] in so far as he was recommending surgery. Despite this incentive, Dr. McClellan opined [Becirovic's] condition was not related to the accident.

The single judge of the compensation court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013). Dr. McClellan's deposition testimony and Becirovic's medical records support the compensation court's decision on causation; the reference to a monetary incentive to support an expert's objectivity does not diminish the weight of evidence otherwise discussed by the compensation court in support of its decision. Dr. McClellan stated that Becirovic had spondylolisthesis, which is a degenerative condition. Dr. McClellan could not say with a reasonable degree of medical certainty that lifting the trash bag on March 14, 2010, was a specific event that dramatically changed Becirovic's condition or permanently aggravated symptoms that she was already experiencing because she had chronic, intermittent flareups of back pain for several years. Dr. McClellan found it particularly significant that within the 3 weeks prior to the incident at Wal-Mart, Becirovic had seen Dr. Albertson complaining of back and sciatic leg pain. Dr. McClellan opined that 3 weeks is too close in proximity to be able to attribute all of Becirovic's subsequent symptoms to lifting the trash bag. Dr. McClellan could not say with certainty that lifting the trash bag changed the natural progression of Becirovic's preexisting condition.

Becirovic offered the conflicting medical opinion of Dr. Taylon, who opined that Becirovic's back condition was causally related to the March 14, 2010, incident. However, when the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Lowe v. Drivers Mgmt.*, 274 Neb. 732, 743 N.W.2d 82 (2007). It is for the Nebraska Workers' Compensation Court to determine which, if any, expert witnesses to believe. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004). As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given to their testimony, even where the issue is not one of live testimonial credibility. *Pearson, supra*.

In this case, the compensation court chose to believe Dr. McClellan's medical opinion that Becirovic's back injury was not caused by lifting the trash bag at Wal-Mart, and we will not substitute our judgment for that of the compensation court on appeal.

When considering the evidence in the light most favorable to Wal-Mart and giving it the benefit of every inference reasonably deducible from the evidence, we find that there was sufficient evidence to support the compensation court's findings and conclude that the trial court was not clearly wrong in dismissing Becirovic's claim.

## VI. CONCLUSION

The compensation court was not clearly wrong when it determined Becirovic's low-back injury did not arise out of and in the course and scope of her employment on March 14, 2010. We affirm the dismissal.

AFFIRMED.