IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

LEONARD V. LEONARD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOSEPH GLENN LEONARD, APPELLANT,
V.
KRISTINA KAYE LEONARD, APPELLEE.

Filed October 28, 2014.    No. A-13-942.

Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed.

Avis R. Andrews for appellant.

Anita L. Mayo, of Family & Juvenile Law Omaha, Anita L. Mayo, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

MOORE, Chief Judge.

The marriage of Joseph Glenn Leonard and Kristina Kaye Leonard was dissolved by the district court for Washington County. On appeal, Joseph challenges the district court's decision to award Kristina sole legal and physical custody of their three minor children. Joseph also contends that his due process rights were violated at trial because he did not believe child custody would be a contested issue. For the reasons contained in our opinion below, we affirm the district court's decree.

FACTUAL BACKGROUND

Joseph and Kristina were married on January 1, 2005. They have three children: a daughter born in 2002, a daughter born in 2008, and a son born in 2010. During the marriage, the parties lived in Blair, Nebraska.

On October 10, 2012, Joseph filed a complaint for dissolution of marriage. In his complaint, Joseph requested the court dissolve the marriage, equitably divide the parties' property and debts, and award him custody of the minor children. On October 19, Kristina filed

an answer and counterclaim in which she sought sole legal and physical custody of the minor children.

The district court entered a temporary order on January 18, 2013, in which it granted the parties joint legal and physical custody of the children. The order specified that the children would spend a week at a time with each party, with the exchanges to occur on Tuesday. Because the parties shared custody, the court did not order either party to pay child support. The parties were ordered to equally share in payment of childcare expenses and uninsured health care costs. Joseph was also ordered to reimburse Kristina for half of the cost of the health care insurance monthly premiums.

On April 2, 2013, the court held a hearing on Kristina's motion for reimbursement and payment of the minor children's extracurricular activities and for payment of the parties' income tax preparation. At the hearing, Joseph agreed that he would contribute to the tax preparation expense, but stated that he could not afford to pay for the extracurricular activities. During the hearing, the court informed the parties that it was beginning to conclude that joint custody would not be appropriate. The court noted the parties' disagreements as to a number of issues and stated that it would not order a joint custody arrangement if the parties could not effectively communicate to resolve problems.

In its written order entered on April 11, 2013, the court resolved the issues concerning the income tax return preparation and payment of medical expenses, but it held the matter of reimbursement and payment of extracurricular activities for trial. The order also required the parties to complete mediation within 60 days. Following this hearing, the parties attempted to mediate; however, the record does not contain any evidence that a mediated parenting plan was agreed upon.

Trial was held on August 7, 2013. Joseph appeared pro se while Kristina was represented by an attorney. Joseph informed the court at the outset that he and Kristina had reached an agreement at mediation that custody would be "50/50." Kristina denied that an agreement had been reached. Acknowledging this disagreement, the court stated that custody would be an issue at trial. Joseph did not present any evidence to establish that a custody agreement had been reached at mediation nor did he indicate that he was not prepared for trial or request that the trial be continued in order to prepare to litigate the issue of custody.

The only contested issue at the trial was custody of the minor children. Each party presented evidence on this issue.

Although Joseph was the moving party because he had filed the petition for dissolution, he informed the court at the outset that he did not need to testify. The court then proceeded to Kristina's counterclaim and stated that it would permit Joseph to testify whenever he wanted. Joseph did not object to this procedure.

Kristina called four witnesses who testified that awarding her full custody would be in the children's best interests. Joseph did not cross-examine these witnesses. Katy Kern, one of Kristina's coworkers, testified that she had the opportunity to observe both parties with their children. She highlighted particular instances after the parties' separation which she believed demonstrated Joseph's deficient parenting. Kern testified that she observed the youngest child, who was 2 years old at the time, outside Joseph's home on two separate occasions without supervision. Kern also observed Joseph with all three children at a local restaurant. She testified

that the two younger children were yelling across the restaurant and that Joseph did nothing to correct their behavior. Finally, Kern also testified that she observed children standing and jumping on Joseph's pop-up camper without parental supervision. Kern testified that the activity looked unsafe and that she would not have let her own children participate.

Melanie Johnson, a family friend, testified that she has two young children and has play dates with Kristina and her children once or twice a month. She testified that she had observed Joseph and Kristina together at children's birthday parties. Johnson testified that Kristina was often the parent who cared for and watched the children.

Mary Janice Grover, another family friend, testified that her family does a variety of activities with Kristina and her children. Grover described Kristina as the parent who paid more attention to the children's needs because Joseph's duties with the volunteer fire department occasionally took him away. Grover believed that Kristina should be awarded custody because the children's best interests would be best served if they were placed with a parent who was there full time and could have them on a schedule.

Roma Beebe, Kristina's grandmother, testified that she sees Kristina and her children at least twice a week. Beebe testified that Kristina is the primary caregiver for the children and that Kristina puts the children's needs above everything else. She described Joseph's parenting skills as absent because "a lot of the times he's just not there or he leaves early." Beebe also commented that she knows Joseph does not need to go on every fire call and believed that Joseph needed to get his priorities in order.

During her testimony, Kristina stated that she and Joseph normally discussed the children's major issues together. However, she testified that she has made the majority of the children's medical appointments and taken them to those appointments. Kristina also testified that she had difficulty communicating with Joseph following the separation. She believed that Joseph had received information regarding the middle child's kindergarten roundup and failed to communicate this information with her. She also stated that Joseph failed to inform her of the oldest child's 4-H activities.

Kristina testified as to Joseph's involvement with the volunteer fire department. Joseph began volunteering for the fire department in 2004. Since that time, he has gone to meetings and training every Thursday and also goes on calls at least three nights a week. Kristina stated that sometimes Joseph would be gone until 2 a.m. on nights that he had a fire department meeting. She also testified that Joseph has taken the children on a few calls. Kristina was not aware of the specific arrangements Joseph makes for the children's care when he responds to calls during his parenting time.

Kristina requested the court grant her sole legal and physical custody. She proposed that Joseph would have parenting time overnight each Wednesday and every other weekend. Kristina also proposed that the parties alternate parenting time on the standard holidays.

Joseph cross-examined Kristina and also testified in his own behalf. He maintained that a joint custody arrangement was in the children's best interests. He testified that the parenting time schedule established by the temporary order had been working and that the children seemed to enjoy it. However, he requested that the transition from one party's house to the other be changed from Tuesday to Sunday to make it easier for the children during the school year.

Joseph called three witnesses to testify on his behalf. Andrew Schank, a pastor of a community church, testified that Joseph is around his children "about as much as [he] can be" and that Joseph is very patient with his children. Schank believed that Joseph was more than fit as a parent and understood that Joseph had to be away from the family on occasion because of his duties as a volunteer firefighter. Makayla Greer, Joseph's current girlfriend, testified that Joseph is a good parent who is always there for his children. Greer testified that she observed Joseph taking care of the children at the home before the separation while Kristina would sit at the computer and simply yell at the children. Delbert Leonard, Joseph's father, testified that each party has done an admirable job raising the children. He believed each party should have equal and joint custody of the children.

At the conclusion of the parties' evidence and due to the proximity of the school year's commencement, the court orally announced its decision. The court found both parties to be fit parents, but explained that it reserved the week on/week off joint custody arrangement for cases in which there is "exceptional cooperation between the parties, including communication."

The court awarded sole legal and physical custody of the children to Kristina. In making those determinations, the court announced that the parties had presented a close case and that the court had considered a number of factors. First, the court determined that Kristina provided better supervision of the children, concluding that Joseph's supervision is a little more laid back. The court also found that Kristina had been the primary caretaker of the children and had handled the day-to-day responsibilities, including the medical appointments, school activities, and organizational issues. The court found that both parties were determined to provide appropriate living environments, although the court acknowledged that Joseph's home was probably better for the children because it had more space. Finally, in evaluating the parties' communication, the court found that Kristina kept Joseph more informed about the children than he was able to do for her.

After awarding Kristina sole legal and physical custody, the court established a parenting plan. Joseph was awarded parenting time every Wednesday night overnight and every other weekend beginning on Friday at 5 p.m. and ending Monday at 8 a.m. Holidays were divided among the parties on a yearly alternating basis, and Joseph was awarded up to 5 weeks of parenting time during the children's summer vacation. The parenting plan permitted Joseph to exercise his summer parenting time in periods of up to 2 consecutive weeks. Joseph was also ordered to pay child support of $961 for three children and a portion of Kristina's attorney fees.

A written decree was filed on August 9, 2013, which memorialized the above findings in addition to the agreed-upon property division. The decree also indicated that both parties completed the required parenting education and that they attempted mediation.

Thereafter, Joseph retained an attorney and filed a motion for new trial. Following a hearing at which both parties presented evidence, the district court denied Joseph's motion. Joseph has timely appealed.

ASSIGNMENTS OF ERROR

Joseph assigns a number of errors in his brief; however, the argument section contains only two. Joseph contends the district court erred in granting Kristina sole legal and physical

custody of the minor children as opposed to awarding the parties joint custody. He also argues that his due process rights were violated at trial.

## STANDARD OF REVIEW

In an action for dissolution of marriage, an appellate court reviews de novo on the record the trial court's determination of child custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion. *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012). An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014).

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give great weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Caniglia v. Caniglia*, 285 Neb. 930, 830 N.W.2d 207 (2013).

## ANALYSIS

*Child Custody.*

Joseph claims the district court erred in granting Kristina sole legal and physical custody of the children. He states that the parties had been successfully following a joint custody arrangement for almost a year and that there was no evidence to show that joint custody had a detrimental effect on the children. Joseph maintains that the best interests of the children require the parties to exercise joint legal and physical custody.

When custody of minor children is an issue in a proceeding to dissolve the marriage of the children's parents, custody is determined by parental fitness and the child's best interests. See, *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007); *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009); Neb. Rev. Stat. § 42-364(2) (Supp. 2013). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Maska v. Maska, supra*. Because the trial court found that Joseph and Kristina were both fit parents, a finding that Joseph does not challenge, we consider the children's best interests.

The best interests of a child require a parenting arrangement "for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress." Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2012). The best interests of a child also require:

> That the child's families and those serving in parenting roles remain appropriately active and involved in parenting with safe, appropriate, continuing quality contact between children and their families when they have shown the ability to act in the best interests of the child and have shared in the responsibilities of raising the child.

§ 43-2923(3). Section 43-2923(6) further provides:

> In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member[;] and

(e) Credible evidence of child abuse or neglect or domestic partner abuse.

Joint legal custody is defined as "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(11) (Cum. Supp. 2012). Joint physical custody means "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time." § 43-2922(12).

Joint custody is further addressed in § 42-364(3), which states:

Custody of a minor child may be placed with both parents on a joint legal custody or joint physical custody basis, or both, (a) when both parents agree to such an arrangement in the parenting plan and the court determines that such an arrangement is in the best interests of the child or (b) if the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent.

Both parties submitted evidence at trial regarding custody of the children. Kristina testified that she had been the children's primary caregiver and that Joseph was often gone because of his responsibilities as a volunteer for the fire department. She also stated that Joseph did not always adequately communicate with her regarding the children. There was also testimony that Joseph had not been properly supervising the children. Based on the record before us, we cannot conclude the district court abused its discretion when it awarded Kristina sole legal and physical custody of the children. See, *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009) (§§ 42-364(3) and 43-2923 require district court to devise parenting plan and to consider joint legal and physical custody; statutes do not require district court to grant equal parenting time to children if such is not in children's best interests); *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009) (communication is essential requirement for joint custody to be successful).

Joseph also challenges the determination of his child support obligation, although he does not assert error in the court's mathematical calculations. Rather, he argues only that using the standard child support calculation worksheet as opposed to the joint physical custody support worksheet lowers his income and that the child support would need to be modified if we reverse the custody determination. Because we are affirming the award of sole custody to Kristina, we need not address or modify the child support.

*Due Process.*

Joseph also raises two arguments regarding his due process rights at trial. First, Joseph argues that his due process rights were violated because he did not have notice that sole custody would be an issue at trial. Next, he claims that a due process violation occurred because the district court allowed evidence to be introduced that did not comply with the rules of evidence.

The fundamental liberty interest of natural parents in the care, custody, and management of their children is afforded due process protection. See *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker. *Id.*

In his brief, Joseph asserts that he elected to represent himself at trial because he had no reason to anticipate that custody would be a contested issue. Although Joseph informed the court at trial that he believed custody had been resolved at mediation, he did not submit any evidence that an agreement was actually reached at mediation. Further, he did not move for a continuance or raise any objection when the court announced that custody would be an issue during trial. See *Geiss v. Geiss*, 20 Neb. App. 861, 835 N.W.2d 774 (2013) (failure to make timely objection waives right to assert prejudicial error on appeal). In addition, Joseph called three witnesses to testify on his behalf at trial which demonstrated that he was prepared to litigate custody at trial. The record demonstrates that Joseph had notice that custody was going to be litigated at trial, he was afforded an opportunity to confront and cross-examine witnesses, and he was able to present his own evidence. Joseph did not have a constitutional right to counsel in this proceeding, and there is no claim that the trial was not before an impartial decisionmaker. We conclude there was no due process violation when the court considered child custody as an issue at trial.

Further, we reject Joseph's argument that his due process rights were violated because the district court allowed Kristina "to flaunt the rules of evidence." Brief for appellant at 25. Joseph contends that Kristina's witnesses subjected the trial court to foundationless evidence, hearsay, opinions, and conclusions and that he had no one available to object on his behalf. However, Joseph fails to identify the specific evidence that he contends was erroneously admitted. See *In re Interest of Jordana H. et al.*, 22 Neb. App. 19, 846 N.W.2d 686 (2014) (it is not duty of reviewing court to search record for purpose of ascertaining whether there is error, and any error must be specifically pointed out). Nor does Joseph point to any objections he made to the receipt of evidence that were erroneously overruled by the district court. In fact, the record shows that Joseph did not object to the admission of any evidence throughout the trial. In order to claim error from the admission of evidence, objection must be made. See *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996) (if party against whom evidence is offered fails to object to such evidence, that party is considered to have waived whatever objection he or she may have had, and evidence is in record for consideration same as other evidence). Despite Joseph's argument to the contrary, a pro se litigant is held to the same standards as one who is represented by counsel. *Pope-Gonzalez v. Husker Concrete*, 21 Neb. App. 575, 842 N.W.2d 135 (2013). Finally,

an appellate court presumes in a bench trial that the judge was familiar with and applied the proper rules of law unless it clearly appears otherwise. *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013). We conclude that Joseph has failed to establish that he was denied due process at trial in connection with the evidence received by the court.

Joseph also argues that the district court erred in failing to grant his motion for new trial, but he argues this only in connection with his arguments regarding custody and due process above. Having found that the district court did not err in its award of sole custody to Kristina as opposed to joint custody or in the conduct of the trial, we likewise find no abuse of discretion in the denial of Joseph's motion for new trial.

*Attorney Fees on Appeal.*

Kristina's attorney filed a motion for attorney fees on appeal, and in counsel's supporting affidavit, she states that she and Kristina agreed upon a flat fee of $5,000 for counsel's services on appeal. Counsel states that her services included reviewing the record from the trial below, researching the issues on appeal, preparing the appellate brief, and attending oral argument. She further stated that the flat fee was based on her normal hourly rate of $275, which rate she states is fair and reasonable.

In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

We sustain Kristina's motion for attorney fees in the sum of $5,000.

CONCLUSION

We conclude the district court did not err when it granted Kristina sole legal and physical custody of the children. Further, Joseph was not denied due process. Kristina's motion for attorney fees on appeal in the amount of $5,000 is sustained.

AFFIRMED.