ALVIN PHILLIPS, APPELLANT, v. MONROE AUTO EQUIPMENT COMPANY, A CORPORATION, APPELLEE.

558 N.W.2d 799

Filed January 24, 1997. No. S-95-112.

Bernard J. Glaser, Jr., and Greg C. Harris for appellant.

James J. Paloucek and Royce E. Norman, of Norman & Paloucek Law Offices, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

## INTRODUCTION

In this workers' compensation case, the plaintiff-appellant, Alvin Phillips, claims entitlement to benefits because of bilateral carpal tunnel syndrome and lateral epicondylitis, resulting

from repetitive lifting arising out of and in the course of his employment with the defendant-appellee, Monroe Auto Equipment Company (Monroe). The dismissal of his petition on original hearing was affirmed by a review panel of the Nebraska Workers' Compensation Court, whereupon Phillips appealed to the Nebraska Court of Appeals. On our own motion, we removed this matter to our docket in order to regulate the caseloads of the Court of Appeals and this court. This case requires us to decide whether the compensation court acted in excess of its powers when it excluded certain expert medical testimony on the determinative issue of causation based solely or primarily on Workers' Comp. Ct. R. of Proc. 4 (1994) (hereinafter rule 4). For the reasons that follow, we specifically disapprove of the compensation court's application of rule 4D, and we therefore vacate the judgment of dismissal and remand with directions.

## FACTUAL BACKGROUND

In the latter part of 1990, Phillips was employed by a company which cleaned the IBP plant in Lexington, Nebraska. His job involved the use of a high-pressure hose to wash out coolers. Phillips worked no more than 2 months for this employer, quitting just before Christmas 1990. It was at this time that Phillips first developed pain in his left elbow. Phillips sought treatment for this pain from his physician, Dr. Gregory Kloch. Dr. Kloch diagnosed Phillips' elbow pain as lateral epicondylitis, otherwise known as tennis elbow.

The cause of Phillips' lateral epicondylitis was thought to be a result of his employment, specifically, the use of a high-pressure hose. Dr. Kloch told Phillips to stop using the high-pressure hose, and within 2 months of leaving this job, Phillips testified that his elbow felt fine. Moreover, Dr. Kloch stated that at this time, February 1991, Phillips' lateral epicondylitis had resolved.

After Phillips' employment cleaning the IBP plant but before his employment with Monroe, Phillips worked for a commercial cleaning company, cleaning offices in Lincoln, Nebraska. This job lasted no longer than 2 months. He then worked for 2 months as a temporary employee operating an iron punch for

Orthman Manufacturing of Lexington. Phillips did not report experiencing any further problems with his elbow while working for either of these employers.

Phillips' employment with Monroe commenced in May 1991. Initially, Phillips packaged shock absorbers and later worked assembling various specialty shocks. On June 25, 1991, while working on Monroe's paint line hanging shocks, Phillips reported injuring his left elbow. Within 24 hours of the occurrence of this injury, Phillips sought medical attention from Dr. Kloch. Dr. Kloch diagnosed Phillips' injury as lateral epicondylitis.

In addition, on July 30, 1991, Phillips reported to his supervisor that he was having a problem with his hands swelling and going numb or falling asleep. Phillips claimed this injury first occurred 10 days to 2 weeks prior to his report. Phillips sought medical treatment for this injury from Dr. Kloch, who diagnosed the injury as bilateral carpal tunnel syndrome.

It was at this time that Dr. Kloch referred Phillips to Dr. Robert Urban, an orthopedic specialist located in Kearney, Nebraska. Dr. Urban treated Phillips' bilateral carpal tunnel syndrome in October 1991 by performing a surgical release procedure on each wrist separately within a 4-week period. In addition, Dr. Urban ultimately treated Phillips' lateral epicondylitis through two surgeries, the first performed on November 21, 1991, and the second on August 17, 1992. Phillips' employment with Monroe came to an end in early February 1992.

## PROCEEDINGS IN WORKERS' COMPENSATION COURT

The trial of this matter was held on July 13, 1994. At trial, Phillips offered in evidence several exhibits, including exhibits 28 and 29, the depositions of Drs. Kloch and Urban respectively. The deposition of Dr. Kloch was taken on July 1, 12 days before trial. The deposition of Dr. Urban was taken on July 8, 5 days before trial. Counsel for Monroe did not object to the general offer of exhibits 28 and 29 at trial, but counsel did reserve all objections that he made at the time of the depositions based primarily on Phillips' failure to make timely rule 4 disclosures.

The trial court did not rule on Monroe's rule 4 objections at the time of trial. The trial court reserved ruling on the rule 4 objections until July 29, 1994, when the court entered an order of dismissal against Phillips. In its order of dismissal, the trial court sustained two of Monroe's objections to Dr. Kloch's testimony (both based on rule 4 failure to disclose) made when the physician was asked his professional opinion of the cause of Phillips' lateral epicondylitis and bilateral carpal tunnel syndrome. The trial court also sustained seven of Monroe's objections to Dr. Urban's testimony (all based in whole or primarily on rule 4 failure to disclose) made when this physician was asked his professional opinion of the cause of Phillips' lateral epicondylitis and bilateral carpal tunnel syndrome.

The trial court, in its order, noted that the primary issue in the instant case is one of causation. The court further noted that carpal tunnel syndrome and lateral epicondylitis are both medical conditions that require expert testimony regarding causation. After the trial court sustained Monroe's objections raised during the depositions of both Drs. Kloch and Urban, the court determined that Phillips failed to meet his burden of proof of showing, by a preponderance of the evidence, the causal connection between the alleged injury and employment, as required by law.

A three-judge review panel affirmed the trial court's order of dismissal. Phillips contends in his brief that, after filing his notice of appeal, he filed a motion to amend the bill of exceptions to have the record include the rule 4 disclosures and underlying discovery materials pursuant to Neb. Ct. R. of Prac. 5 (rev. 1996). Phillips claims that this motion was overruled after a hearing at the trial court level. There is no such motion contained in the record, nor is there an order from the trial court attached to the bill of exceptions, as required by rule 5B(5).

## SCOPE OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court judgment, order, or award only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the

record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). See Neb. Rev. Stat. § 48-185 (Reissue 1993).

## ASSIGNMENTS OF ERROR

Summarized and restated, Phillips contends that the review panel erred in not finding (1) that the trial court's decision was contrary to law when it sustained Monroe's rule 4 objections to specific testimony contained within exhibits 28 and 29, (2) that the trial court's decision was clearly wrong on the evidence when it found that Phillips' injuries did not arise out of and in the course of his employment with Monroe and that Phillips' lateral epicondylitis was a condition that existed prior to Phillips' employment with Monroe, and (3) that the trial court was in error when it denied Phillips' motion to amend the bill of exceptions to include discovery-related pleadings filed with the compensation court. The disposition of this case requires that we review only Phillips' first assigned error.

## ANALYSIS

Phillips first claims, somewhat unartfully, that the trial court acted in excess of its powers when it excluded the opinion testimony of Drs. Kloch and Urban regarding causation pursuant to Monroe's rule 4 objections. Neb. Rev. Stat. § 48-163(1) (Reissue 1993) provides:

The Nebraska Workers' Compensation Court, by a majority vote of the judges thereof, may adopt and promulgate all reasonable rules and regulations necessary for carrying out the intent and purpose of the Nebraska Workers' Compensation Act and shall administer and enforce all of the provisions of such act, except such as are committed to the Supreme Court.

Pursuant to this legislative mandate, the Workers' Compensation Court has promulgated and adopted certain rules of procedure. At the outset, we are mindful that the Nebraska

Workers' Compensation Court was created pursuant to article V, § 1, of the Nebraska Constitution. See Neb. Rev. Stat. § 48-152 (Reissue 1993). Moreover, article V, § 1, of the Nebraska Constitution vests in this court the power of general administration over all courts in this state, including the Workers' Compensation Court.

The pertinent portions of rule 4 in effect at the time of trial were as follows:

**A. Required Disclosures.**

**1. Initial Disclosures.**

Each party shall without awaiting a discovery request provide to every other party;

a. the name and, if known, the address and telephone number of each individual likely to have information that bears significantly on any claim or defense, identifying the subjects of the information;

b. a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are likely to bear significantly on any claim or defense . . . .

. . . .

These disclosures shall be made (1) by the plaintiff within 14 days after service of an answer to its petition; (2) by a defendant within 14 days after serving its answer to the petition . . . .

**2. Disclosure of Expert Testimony.**

a. In addition to the disclosures required in paragraph 1, each party shall disclose to every other party any evidence that the party may present at trial by or from any witness qualified as an expert.

This disclosure shall be in the form of a written report prepared and signed by the witness which complies with Rule 10.

b. Unless the court designates a different time, the disclosures shall be made at least 30 days before trial, or if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph 2,a, within 10 days after the disclosure made by such other party. . . .

**3. Pretrial Disclosures.** In addition to the disclosures required in the preceding paragraphs, each party shall provide to every other party the following information regarding the evidence that the disclosing party may present at trial:

a. the name, the address and telephone number of each witness, separately identifying those whom the party expects to present and those whom the party may call if the need arises whether or not previously provided;

b. the designation of those witnesses whose testimony is expected to be presented by means of a deposition and, if not taken by stenographic means, a transcript of the pertinent portions of such deposition testimony; and

c. an appropriate identification of each document or other exhibit, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.

These disclosures shall be made at least 30 days before trial, or if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph 3, within 10 days after the disclosure made by such other party. Within 10 days thereafter, unless a different time is specified by the court, other parties shall serve and file (1) any objections that deposition testimony designated under subparagraph 3,b cannot be used and (2) any objection to the admissibility of the materials identified under subparagraph 3,c. Objections not so made shall be deemed waived unless excused by the court for good cause shown. Objections shall be heard at time of trial.

**4. Form of Disclosures; Filing.** The disclosures required by the preceding paragraphs shall be made in writing and signed by the party or counsel. The disclosures shall be served . . . and proof of service promptly filed with the court. Unless otherwise ordered by the court, disclosure materials shall not be filed with the court. Only the proof of service is to be filed with the court.

. . . .

**D. Failure to Disclose.** Any witness not listed in timely pretrial disclosure shall not be allowed to testify. *An expert witness shall not be allowed to testify if a written report from such expert witness has not also been timely disclosed.* No party will be allowed to introduce documentary evidence not timely exchanged, or to amend forms, answers, medical reports or lists of witnesses within 30 days of the date of trial, unless the offering party shows good cause why the late offering of such evidence should be excused. Any party may use an exhibit or witness listed in the pretrial disclosure of any other party. Motions for extension of time or for continuances because evidence has not been timely exchanged shall be heard at time of trial.

(Emphasis supplied.)

The transcript in the present case reveals that Phillips filed his petition on December 30, 1993. Monroe filed its answer on January 10, 1994. Phillips then filed with the trial court a notice of service of his initial disclosures pursuant to rule 4A(1) on January 25, while Monroe filed a notice of service of its initial disclosures on February 4. Both parties supplemented their disclosures, with Monroe filing notices of service on February 9 and 25, and Phillips filing a notice of service on June 23. In addition, the transcript shows that Monroe served upon Phillips a set of interrogatories and request for production of documents on May 11.

Monroe filed a notice of service on June 13, 1994, regarding its pretrial disclosures pursuant to rule 4A(3). Phillips filed a notice of service on June 14 of his pretrial disclosures pursuant to rule 4A(3). The trial of this matter was set for July 13.

The problem that confronts us, and that must have confronted the review panel, is that the record does not reflect what documents were disclosed from one party to the other pursuant to rule 4. Even though the trial court sustained Monroe's objections to the expert witnesses' testimony on the dispositive issue of causation based primarily on rule 4, an exhaustive review of the record reveals no proof by either party of what disclosures were made to the opposing party prior to trial. There is not a scintilla of evidence of what disclosures were actually made or

what documents were exchanged between the parties prior to the July 13, 1994, trial. Even though the transcript contains the above-referenced notices of service of disclosure documents, these notices were not offered in evidence at trial, and, in any event, the notices contain no information regarding specific documents that may have been exchanged between the parties.

Both parties argue extensively in their briefs the effects of rule 4 disclosures upon their respective cases. Phillips asserts that Monroe was provided with detailed written medical reports by Drs. Kloch and Urban regarding causation in Phillips' initial and supplemental rule 4 disclosures. In addition, Phillips claims that Drs. Kloch and Urban were listed as witnesses for trial in *both* Phillips' and Monroe's pretrial disclosures and that the depositions of both physicians were taken in lieu of trial testimony. Monroe, on the other hand, urges that it was not given adequate disclosure of Phillips' causation evidence prior to the depositions. Even though Monroe did not file a motion to continue the trial based on an untimely disclosure of evidence (rule 4D), Monroe nevertheless claims that it was effectively precluded by time constraints from obtaining an independent medical evaluation to refute the expert opinions of Drs. Kloch and Urban.

The fact is that we do not have an adequate record to determine which, if either, of these claims is correct. The instant case is further complicated in that Phillips was confronted with a situation in which he could not complain of the trial court's error in sustaining Monroe's rule 4 objections because the court did not rule on the objections until entering its order of dismissal 16 days after the trial. In *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995), we determined that appropriate judicial trial practice requires that trial judges rule on matters submitted to them in a timely fashion in order that the litigants be in a position to react to the ruling. While the trial in this case occurred prior to our decision in *Toombs*, we again take this opportunity to condemn the practice of deferring rulings on evidential, discovery, and like matters until deciding the cause on the merits—at a time when the litigants are no longer in a position to react to the ruling. See *id.*

Based on the record before us, we are asked to determine whether the compensation court acted in excess of its powers when it excluded the opinion testimony of Drs. Kloch and Urban regarding causation pursuant to Monroe's rule 4 objections. In order to answer that question, we must determine what power the compensation court possesses in adopting and promulgating reasonable rules necessary "for carrying out the intent and purpose of the Nebraska Workers' Compensation Act." § 48-163(1).

This court has repeatedly held that the Nebraska Workers' Compensation Act is one of general interest, not only to the worker and his or her employer, but as well to the state, and it should be so construed that technical refinements of interpretation will not be permitted to defeat it. See, *Fite v. Ammco Tools, Inc.*, 199 Neb. 353, 258 N.W.2d 922 (1977); *Speas v. Boone County*, 119 Neb. 58, 227 N.W. 87 (1929). As in *Fite*, we are concerned here with the refusal of the compensation court to admit evidence that would be admissible in virtually all the trial courts of this state; evidence which would directly tend to prove the principal issue of the case, i.e., whether there is a causal connection between the alleged injury and the employment of the worker.

We observed in *Fite* that given the beneficent purposes of the Nebraska Workers' Compensation Act, in its exemption from the rules of evidence, see Neb. Rev. Stat. § 27-1101(4)(d) (Reissue 1995), the compensation court is empowered to admit evidence not admissible in the trial courts of this state. Neither § 27-1101(4) nor § 48-163(1) grants the compensation court the right to establish rules of evidence, procedure, or discovery that are more restrictive than the rules applicable to the trial courts of this state. Rather, their purpose is to allow the compensation court to "make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act." Neb. Rev. Stat. § 48-168(1) (Reissue 1993). See, also, *Fite v. Ammco Tools, Inc., supra.* In addition, due process requirements in many instances will "control the type of evidence [that is admissible] in a trial of a

workers' compensation case. . . . See, also, 3 A. Larson, The Law of Workmen's Compensation § 79.80 (1989) . . . ." *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 910, 464 N.W.2d 343, 350 (1991).

Therefore, we hold that, at a minimum, the parties litigating before a compensation court are permitted to introduce evidence which is procedurally and substantively admissible in the trial courts of this state. The procedural, evidentiary, and discovery rules established by the compensation court may not be more restrictive or onerous than those of the trial courts in this state. We can think of no principled reason why discovery or procedural rules in workers' compensation cases should serve a different purpose than in our civil courts.

The primary purpose of the discovery process is the exploration of all available and properly discoverable information to narrow the fact issues in controversy so that a trial may be an efficient and economical resolution of a dispute. See *Christianson v. Educational Serv. Unit No. 16*, 243 Neb. 553, 501 N.W.2d 281 (1993). The purpose of the discovery process is to provide an adequate pretrial preparation as a basis for an informed cross-examiner and informative cross-examination. Further, the discovery process enables litigants to prepare for a trial without the element of an opponent's tactical surprise, a circumstance which might lead to a result based more on counsel's legal maneuvering than on the merits of the case. *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987).

Substantive sanctions regarding discovery and other pretrial procedural matters are designed to prevent a party who has failed to comply with discovery from profiting by such misconduct. See *id*. However, before the ultimate sanction of prohibiting a party from introducing otherwise admissible evidence is imposed in civil cases, the opposing party must file a motion requesting such a sanction with reasonable notice to all affected parties. See, e.g., Neb. Ct. R. of Discovery 37 (rev. 1996). Such a sanction is not even considered in this state's civil courts unless all affected parties have received notice and an opportunity to be heard on the merits. In the instant case, there was no showing by Monroe that (1) it had not received a written report

from the expert witnesses setting forth their respective opinions regarding causation, or (2) the experts' written reports were not disclosed on a timely basis. Rule 4D does not require such a showing before the compensation court may impose the sanction of prohibiting a witness' testimony based on a rule 4 objection by either party.

We conclude that substantive sanctions regarding discovery and other pretrial procedural matters in the compensation court should be subject to at least the same procedural safeguards as comparable sanctions for alleged discovery and pretrial procedural violations in Nebraska's civil courts. For the foregoing reasons, we specifically disapprove of the compensation court's application of rule 4D to prohibit expert testimony in the absence of adequate procedural safeguards equal to those utilized in the trial courts of this state.

Under the standard of review set forth in § 48-185, we are not permitted to make an independent determination of the merits of the instant case in this court. Rather, in our review, as set forth above, we conclude that the compensation court "acted without or in excess of its powers" when it excluded the opinion testimony of Drs. Kloch and Urban regarding causation pursuant to Monroe's rule 4 objections without the benefit of hearing both parties on the merits. We are unable to determine what the compensation court would have decided had the physicians' testimony regarding causation been admitted in the first instance.

## CONCLUSION

Therefore, we vacate the compensation court's judgment of dismissal and remand the cause to the compensation court with the directions that the trial judge conduct such proceedings as are necessary to determine whether the requisites of due process have been met sufficient to admit the testimony of Drs. Kloch and Urban regarding causation and, upon such determination, conduct further proceedings consistent with this opinion.

JUDGMENT VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.