IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BLANKENBECLER V. ROGERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARTHA BLANKENBECLER, APPELLANT,

V.

GINGER L. ROGERS, CHANEL OWENS, AND SHANICE ROSS, APPELLEES.

Filed February 24, 2015.    No. A-13-894.

Appeal from the District Court for Douglas County: JOSEPH S. TROIA, Judge. Affirmed in part, and in part reversed and remanded for a new trial.

Robert S. Sherrets and Jason M. Bruno, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Karen Weinhold and Angela D. Jensen-Blackford, of Engles, Ketcham, Olson & Keith, P.C., for appellees.

MOORE, Chief Judge, and IRWIN and RIEDMANN, Judges.

MOORE, Chief Judge.

INTRODUCTION

Martha Blankenbecler brought suit against the Appellees for damage to her vehicle. A jury verdict was entered in Blankenbecler's favor against Shanice Ross, which verdict was accepted by the district court for Douglas County. On appeal, Blankenbecler challenges the district court's denial of her motion for sanctions, the admission of certain evidence regarding the value of her vehicle, and the denial of her motion for new trial. We find no abuse of discretion by the district court in denying Blankenbecler's motion for sanctions. However, we find the admission of certain exhibits was prejudicial error. We therefore reverse the judgment of the district court and remand the cause for a new trial.

- 1 -

BACKGROUND

On November 15, 2011, Blankenbecler filed a complaint in the district court for negligence and negligent entrustment against Ginger L. Rogers, Chanel Owens, and Shanice Ross. Blankenbecler alleged that on June 29, Ross recklessly, carelessly, and negligently drove a vehicle owned by Rogers and entrusted to Ross by Rogers and Owens into a parked pickup truck owned by Blankenbecler, totaling the pickup. Blankenbecler later voluntarily dismissed the action as to Rogers and Owens, and the action proceeded only against Ross.

On January 3, 2012, Ross answered, through counsel, admitting liability but denying the extent of Blankenbecler's damages.

On March 16, 2012, Blankenbecler filed a motion to compel, seeking an order requiring Ross to provide sufficient answers to certain interrogatories and verify her answers to interrogatories under oath. On April 9, the district court entered an order granting this motion in part. The court ordered Ross to answer a particular interrogatory and to produce any statements in her possession and gave her 15 days to verify her answers to interrogatories under oath. On April 25, Blankenbecler filed a subsequent motion to compel Ross' deposition, alleging that after requesting dates for Ross' deposition, her counsel indicated she was unable to provide any such dates because she had never been able to reach Ross. On May 16, the court granted the subsequent motion to compel filed by Blankenbecler and ordered Ross to appear for a deposition within 30 days.

On July 9, 2012, Blankenbecler filed a motion pursuant to Neb. Ct. R. Disc. § 6-337 in which she asked for sanctions as Ross had failed to comply with the district court's previous orders. Blankenbecler sought attorney fees and asked the court to designate as established fact that her damages were $9,500 and to prohibit Ross from offering evidence on the issue of damages and/or enter a default judgment against Ross. On August 6, Ross' counsel filed an opposition to Blankenbecler's motion and a counter motion for sanctions, including attorney fees, pursuant to Neb. Rev. Stat. § 25-824 (Reissue 2008). Ross' counsel attached documentation of her communications with Blankenbecler's counsel about issues with respect to Ross.

The district court heard the parties' motions for sanctions on August 15, 2012. Dialog during the hearing between the court and the parties' counsel reveals that Ross' counsel did not know where Ross was and had never been able to make contact with her, despite making various attempts. Ross' counsel also had agreed to accept service for her in exchange for admitting liability with the further agreement that any award would be paid. Given the admission of liability, Ross' counsel questioned the need for a deposition as Ross would only be able to testify to the facts of the accident and not to Blankenbecler's damages.

On August 16, 2012, the court entered an order denying Blankenbecler's motion for sanctions but continuing Ross' motion for sanctions until further notice. Ross' motion for sanctions was eventually denied.

A jury trial was held on May 6, 2013. As Ross had admitted liability, the only issue was Blankenbecler's damages. Blankenbecler purchased the 1994 Ford Ranger XLT at issue in this case as new in either 1994 or early 1995. According to Blankenbecler, the Ranger was in very good condition at the time of the accident and only had 73,000 miles on it. The Ranger did have some rust damage around the wheel wells and minor hail damage on the hood. Blankenbecler

was not able to drive the Ranger after the accident and obtained a rental car for two weeks at a charge of $36.80 per day. She valued the Ranger, prior to the accident, at $7,248 and testified that after the accident it was "not worth a penny." On cross-examination, Blankenbecler testified that she no longer owned the Ranger, asserting when asked where the Ranger was, "Your client has it. [Ross] has it."

Blankenbecler presented testimony from Dennis Troy Robey, an individual with more than 20 years' experience in the car business. Robey lived in Florida at the time of trial, but he had previously owned two used car lots and a Mitsubishi dealership in Nebraska. Robey described his experience with and process used for valuing vehicles in the course of his business, and he valued the Ranger, prior to the accident, at $6,750. Robey did not inspect the Ranger personally, but used photographs and information obtained from Blankenbecler in valuing it. He also used "some of the normal guides," such as the "National Auto Dealers Association (NADA)" book and "Kelly Blue Book," but felt that those guides were not as accurate as "Manheim Market Reports and other things" because "in the automotive industry . . . the guides . . . are founded by depreciation matrixes rather than real numbers," which means "you have to base your decision largely on your experience with similar vehicles." He did not determine the Ranger's value after the accident but agreed that it appeared to be a total loss.

Ross' counsel presented testimony from Shelly Marsolek, who had worked for six years as an auto estimator at the time of trial. Over the course of her career, she has prepared 16,000 to 17,000 separate vehicle estimates. Prior to her work as an estimator, she attended school to learn collision repair. According to Marsolek, she has been involved in the car industry for almost 20 years. Marsolek has received training from her employer on various estimating systems, including the "Audatex system." We note that Marsolek referred to both "Audatex" and "AutoSource" at trial but the distinction or relationship between the two terms is not clear from the record.

Marsolek described the process she uses in preparing a damage estimate, which includes a personal inspection of the vehicle, taking photographs, and notation of any prior damage. Marsolek then prepares a Vehicle Inspection Report which lists all the options on the vehicle, the overall condition of the vehicle, and any prior damage. Marsolek personally enters the relevant data about the vehicle into the electronic estimating system, which system performs the mathematical equations and arrives at the estimate of damage. In the event that the vehicle is a total loss, the system determines the fair market value. Marsolek testified that the Audatex estimating system is a computerized system which generates information that was previously done by hand.

In determining the fair market value of a vehicle that is a total loss, Marsolek stated that most of the time "they" use the NADA book, which takes into consideration the geographic area where the vehicle is located, something according to Marsolek that the Kelly Blue Book does not do. Marsolek looked at the NADA book when working on the evaluation of the Ranger in this case and indicated that the valuation prepared by AutoSource was actually a little higher than that shown in the book. Marsolek considers the NADA a reliable source.

In valuing the Ranger, Marsolek inspected it in person and noted certain damage not caused by the accident. Such other damage included damage to the hood, along with hail and rust damage. Marsolek testified that the hail damage does not show up in the photographs of the

Ranger and that hail damage is often difficult to see. She also indicated that some of the rust she observed on the Ranger is not shown in the photographs. During her inspection of the Ranger, Marsolek prepared a Vehicle Inspection Report using the Audatex program, which was marked as exhibit 9. Exhibit 9 is a preprinted report, dated July 6, 2011, showing various attributes for Blankenbecler's Ranger, noting and valuing prior damage, and determining that the damage to the vehicle from the accident resulted in a total loss. Marsolek testified that the report contains the vehicle information she obtained during her inspection, that it is the regular practice of her company to create such records when a vehicle is a total loss, and that such records are kept in the ordinary course of her company's regularly conducted business activity. Marsolek testified that the report contained information she relied upon at least in part in determining her opinion as to the Ranger's fair market value. The district court admitted exhibit 9 into evidence over Blankenbecler's foundation, hearsay, and relevance objections.

After performing her inspection and preparing the Vehicle Inspection Report, Marsolek obtained a valuation of the Ranger through the Audatex system, which report was prepared on July 5, 2011, and marked as exhibit 8. Marsolek testified that preparation of the valuation report was a regular part of her job duties and that the AutoSource valuation is kept in the ordinary course of her company's regularly conducted business activity. The district court received exhibit 8 into evidence over Blankenbecler's foundation, hearsay, and relevance objections. Exhibit 8, in a section entitled "N.A.D.A VALUE," lists the base value for the Ranger as $2,850 and adds $813 for low mileage for an adjusted total of $3,663.

Over Blankenbecler's foundation, relevance, competence, and hearsay objections, Marsolek opined that based on her knowledge and experience as an estimator, her personal inspection of the Ranger, creation of the Vehicle Inspection Report, and the NADA guide, the fair market value of the Ranger at the time of the accident, but excluding any damage caused by the accident, was $3,663. Marsolek also testified that her opinion was reflected in the AutoSource valuation in Exhibit 8.

Marsolek was asked, based on her knowledge and experience, whether vehicles that are considered total losses retain any value. Over Blankenbecler's relevance objections, Marsolek testified that totaled vehicles generally do not retain any value but "as most people know, you can sell your car to a junkyard for 500 bucks. So there's still between a 500 and $800 value for the vehicle." Nevertheless, Marsolek opined that following the accident, the Ranger did not retain any value.

On cross-examination, Marsolek verified that exhibits 8 and 9 were reports generated by Audatex, but which utilized information from Marsolek. Marsolek testified that she did not know what "ultimate factors [Audatex] considered or what adjustments [it] made" until the valuation is returned. She agreed that her opinion of value was based solely on the information she received from AutoSource and the numbers she obtained from the NADA book value. She agreed that she did not know "completely" what the NADA based its value on. At that point, Blankenbecler's attorney moved to strike Marsolek's testimony and exhibits 8 and 9 as "lacking in any foundation or any competence." The district court overruled Blankenbecler's motion and stated that it was for the jury to determine Marsolek's credibility.

On redirect examination, Marsolek explained the Audatex system is a program used by "millions" of body shops as well as insurance companies. She also clarified that the information

she placed into the Audatex system was based upon her inspection of the Ranger, and that her opinion as to $3,663 value of the Ranger was based on her inspection of the vehicle, the NADA guide, and her prior experience buying and selling of personal vehicles.

Following Marsolek's testimony, Blankenbecler presented rebuttal testimony from Robey, who testified further about the NADA guide, its use in the insurance industry, and the methods used in the automobile industry to value vehicles. Blankenbecler also testified further about the damage on the Ranger before and after the accident.

The jury found that Blankenbecler was entitled to damages of $4,178.20. On May 7, 2013, the district court entered judgment on the jury's verdict against Ross. The court reduced the verdict by $515.20, giving a credit to Ross against the judgment for previous payment of rental car fees. On May 8, the court entered an order of verdict nunc pro tunc, correcting the amount of Ross' credit to $368.95.

Blankenbecler filed a motion for new trial on May 9, 2013, which was denied by the district court on June 3. She subsequently perfected an appeal to this court, but we dismissed the appeal for lack of a final appealable order.

On October 4, 2013, the district court entered an order accepting the jury's verdict of $4,178.20 as reduced by the credit of $368.95 and dismissing Ross' motion for sanctions. Blankenbecler subsequently perfected her present appeal to this court.

## ASSIGNMENTS OF ERROR

Blankenbecler asserts that the district court erred in (1) failing to enforce the orders of contempt against Ross, (2) admitting exhibits 8 and 9, (3) allowing Marsolek's testimony, (4) allowing testimony about the general salvage value of vehicles, and (5) refusing to grant Blankenbecler's motion for new trial.

## STANDARD OF REVIEW

The standard of review of a trial court's determination of a request for sanctions is whether the trial court abused its discretion. *Malchow v. Doyle*, 275 Neb. 530, 748 N.W.2d 28 (2008). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Breci v. St. Paul Mercury Insurance Company*, 288 Neb. 626, 849 N.W.2d 523 (2014).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Hike v. State Department of Roads*, 288 Neb. 60, 846 N.W.2d 205 (2014). A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Id.*

Regarding motions for new trial, an appellate court will uphold a trial court's ruling on such a motion absent an abuse of discretion. *First Express Services Group, Inc. v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013).

ANALYSIS

*Request for Sanctions.*

Blankenbecler assigns as error the district court's "failure to enforce the orders of contempt against Ross." However, we note that there were no orders of contempt ever entered for the court to enforce. Rather, it was the failure to sanction Ross for not complying with discovery orders that Blankenbecler argues was error and which we address here.

Sanctions under Neb. Ct. R. Disc. § 6-337 exist not only to punish those whose conduct warrants a sanction but to deter those, whether a litigant or counsel, who might be inclined or tempted to frustrate the discovery process by their ignorance, neglect, indifference, arrogance, or, much worse, sharp practice adversely affecting a fair determination of a litigant's rights or liabilities. *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987). Substantive sanctions regarding discovery and other pretrial procedural matters are designed to prevent a party who has failed to comply with discovery from profiting by such misconduct. *Phillips v. Monroe Auto Equipment Co.*, 251 Neb. 585, 558 N.W.2d 799 (1997). An appropriate sanction under § 6-337 is determined in the factual context of each particular case and is initially left to the sound discretion of the trial court, whose ruling will be upheld in the absence of an abuse of discretion. See *Norquay v. Union Pacific Railroad, supra*. See, also, *Booth v. Blueberry Hill Restaurants*, 245 Neb. 490, 513 N.W.2d 867 (1994). Section 6-337 authorizes sanctions for failure to obey an order to provide or permit discovery and authorizes the trial court to make such orders as are just, including, but not limited to, preventing the party from raising issues or defenses, preventing the party from introducing designated matters in evidence, striking pleadings, dismissing the action, or rendering a default judgment.

The record shows that Ross' counsel, who apparently was retained by Ross' insurance company, accepted service on her behalf and admitted liability, so that the only issue at trial was damages. The district court granted motions to compel filed by Blankenbecler, who sought to depose Ross and sought her compliance with other discovery requests. Ross' counsel have made attempts to contact Ross throughout this case but have been unable to do so, and Ross' counsel communicated this to Blankenbecler's counsel in an effort to resolve the discovery dispute. Nevertheless, Blankenbecler requested sanctions for Ross' failure to comply with the discovery orders, but the court declined to grant the requested sanctions.

Blankenbecler does not explain how the court abused its discretion in failing to grant her request for sanctions, other than the assertion that Ross should not have been able to adduce any evidence or raise any defense to the action. However, Blankenbecler has not shown how the absence of Ross' response to an interrogatory or her deposition testimony negatively affected Blankenbecler's ability to prepare for trial, present evidence, or rebut evidence presented on behalf of the defense. There was no showing that Ross had any information on the sole issue tried to the jury; that being the damage to Blankenbecler's vehicle. The decision to grant Blankenbecler's motion for sanctions was within the court's discretion, and under the particular circumstances of this case, we find no abuse of that discretion. This assignment of error is without merit.

*Exhibits 8 and 9.*

Blankenbecler asserts that the district court erred in admitting exhibits 8 and 9, the computerized printouts of the AutoSource valuation and vehicle inspection report. Blankenbecler objected to the exhibits on the basis of foundation, hearsay, and relevance.

The primary issue before us is whether sufficient foundation was laid for the reports to be admissible as business records.

Documentary evidence is not admissible unless it is authenticated. Neb. Rev. Stat. § 27-901 (Reissue 2008). The foundation of trustworthiness required by the business records exception to the hearsay rule is sufficient to satisfy the authentication requirement of § 27-901. *State v. Castaneda*, 287 Neb. 289, 842 N.W.2d 740 (2014).

Parties seeking to admit a report under the business records exception to the hearsay rule must establish that the activity recorded is of a type that regularly occurs in the course of the business' day-to-day activities and that the record was made as a part of a regular business practice at or near the time of the event recorded, and must authenticate the record by a custodian or other qualified witness. See Neb. Rev. Stat. § 27-803(5) (Reissue 2008); *Misle v. Misle*, 247 Neb. 592, 529 N.W.2d 54 (1995). A computer printout is admissible as a business record if the offeror establishes a sufficient foundation in the record for its introduction. *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2008), abrogated on other grounds, *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

According to 14 Am. Jur. Proof of Facts *2d Admissibility of Computerized Business Records* 173 §17 (1977):

> The foundation for admitting a computer printout as a business record should establish, through the testimony of the custodian of the computer-kept records or other person familiar with the manner in which the records were processed and maintained, the following:
>
> (1) the reliability of the data processing equipment used to keep the records and produce the printout.
>
> (2) the manner in which the basic data was initially entered into the system (for example, cards, teletype, etc.).
>
> (3) that the data were so entered in the regular course of business.
>
> (4) that the data were entered within a reasonable time after the events recorded by persons having personal knowledge of the events.
>
> (5) the measures taken to insure the accuracy of the data as entered.
>
> (6) the method of storing the data (for example, magnetic tape) and the safety precautions taken to prevent loss of the data while in storage.
>
> (7) the reliability of the computer programs and formulas used to process the data.
>
> (8) the measures taken to verify the proper operation and accuracy of these programs and formulas.
>
> (9) the time and mode of preparation of the printouts.
>
> The witness need not necessarily have personal knowledge of the basic data as input to the system, nor personal knowledge of the actual physical operation of the data

> processing equipment, so long as the witness is familiar with the methods employed by the company in processing the business records.

See, also, Annot., 7 A.L.R. 4th 8 (1981).

Marsolek testified that she personally gathered information about the damaged vehicle through her inspection and researched the NADA valuation. As a part of her regular course of business, Marsolek inputted all of this data into the Audatex computer program, which is a program regularly used in her business practice. This program then generates the vehicle inspection report as a computer-generated form. Using the vehicle inspection report, the Audatex program then generates a valuation report. Marsolek testified that she regularly uses these generated reports as a part of her course of business in automobile valuation.

However, there was no evidence adduced in this case regarding the reliability of the data processing equipment used to keep the records and produce the report, the measures taken to insure the accuracy of the data as entered, the method of storing the data, the reliability of the computer programs and formulas used to process the data, or the measures taken to verify the proper operation and accuracy of the programs and formulas. Marsolek testified that she did not know what ultimate factors or adjustments were made by the Audatex system. In short, there was not sufficient testimony about how the computer program worked or its reliability.

We conclude that sufficient foundation was not laid for the admission of the computer reports under the business records exception to the hearsay rule.

To constitute reversible error in a civil case, the wrongful admission of evidence must unfairly prejudice a substantial right of a litigant complaining about the evidence admitted. *In re 2007 Administration of Appropriations of Waters of Niobrara River*, 288 Neb. 497, 851 N.W.2d 640 (2014). Where it does not appear from the record that evidence wrongfully admitted in a jury trial did not affect the result of the trial unfavorably to the party against whom it was admitted, its reception must be considered prejudicial error. *Westgate Recreation Ass'n v. Papio-Missouri River Natural Resources Dist.*, 250 Neb. 10, 547 N.W.2d 484 (1996).

In the context of condemnation proceedings, the Nebraska Supreme Court has found that the admission of an expert's written appraisal report was prejudicial error. In *State, Dept. of Roads v. Whitlock*, 262 Neb. 615, 618, 634 N.W.2d 480, 483 (2001), the Court first observed that an expert's written appraisal report is hearsay and is not admissible unless it falls within a recognized exception. *Id.* The Court found that the appraiser's report and supplemental report were essentially a continued and more thorough testimony of his opinion during jury deliberations, without the benefit of cross-examination or opposing opinion. The Court concluded that the admission into evidence of the expert's appraisal report was prejudicial error. *Id.*

In *Westgate Recreation Ass'n v. Papio-Missouri River Natural Resources Dist.*, *supra*, the Nebraska Supreme Court considered whether the trial court erred in receiving into evidence exhibits consisting of written summaries of the testimony given by two appraisers. The Court observed:

> While the statements contained in the written summaries substantially duplicated certain of the oral testimony given at trial by Westgate's appraisers, it cannot be said that the statements contained in the summaries were themselves made at trial. Inasmuch as the

statements contained in the summaries were offered to prove the truth of the matters asserted therein, the summaries constituted hearsay and were improperly admitted.

250 Neb. at 30. Citing a case from the Virginia Supreme Court, the Court stated that "the admission of evidence of this type is prejudicially erroneous because during its deliberations, the jury might place more weight on written summaries than on its collective recollection of the actual testimony." 250 Neb. at 31.

In the case before us, we conclude that the admission of exhibits 8 and 9 was prejudicial error. Marsolek testified at one point that she relied solely on the Audatex reports in arriving at her opinion as to the value of the damaged vehicle. Although Marsolek later indicated that she also relied upon her own inspection and the NADA guide, she nevertheless ultimately opined to the exact value as that shown on the Audatex report. The jury had the benefit of seeing these reports during deliberations and could have placed more weight on them than the testimony given by the witnesses.

Accordingly, we reverse the judgment of the district court and remand the cause for a new trial.

*Marsolek's Testimony.*

Blankenbecler argues briefly that Marsolek was not qualified as an expert, but she did not separately assign this as error. Accordingly, we do not consider her argument. Errors argued but not assigned will not be considered on appeal. *In re Trust Created by Nabity*, 289 Neb. 164, 854 N.W.2d 551 (2014).

Blankenbecler also asserts that the district court erred in allowing Marsolek's testimony as she was "improperly regurgitating the opinions of an unproduced expert." Brief for appellant at 12. This argument is based upon Marsolek's reliance on exhibits 8 and 9, which we have determined were improperly received into evidence, resulting in prejudicial error necessitating a new trial. To the extent that this issue could arise again on retrial, we note, without addressing Marsolek's status as an expert, that Rule 703 of the Nebraska Evidence Rules allows experts to rely on hearsay facts or data reasonably relied upon by experts in the field as a basis for their opinion. *McArthur v. Papio Missouri River Natural Resources Dist.*, 250 Neb. 96, 547 N.W.2d 716 (2006). The value of an opinion of an expert witness, or any witness, may be dependent upon and is no stronger than the facts upon which it is predicated, and it has no probative force unless the assumptions upon which it was based are shown to be true. *Id.* However, because Marsolek's opinion was solely, or at least substantially, based upon exhibits 8 and 9, it was error to allow her opinion testimony without further foundation.

*Testimony about Salvage Value.*

Blankenbecler asserts that the district court erred in allowing Marsolek's testimony about the general salvage value of vehicles. She argues the evidence was not relevant and, based on a written question submitted by the jury during deliberation, was confusing the jury. The jury asked, "Does the plaintiff still own the car? There was a suggestion during the trial that the defendant had the car in her possession???" The court responded in writing, "Must rely on the evidence represented [sic]." Although discussion of this issue is not necessary given our

resolution of Blankenbecler's other assignments of error, we address it briefly as it is likely to recur on remand. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *Nebraska Accountability and Disclosure Commission v. Skinner*, 288 Neb. 804, 853 N.W.2d 1 (2014).

Where the damage to personal property is such that it cannot be repaired and the property thereby restored to substantially its condition immediately before the damage occurred, or when the reasonable cost of repair exceeds the difference in market value of the property immediately before and immediately after the injury, the measure of damages is the lost market value plus the reasonable value of the loss of use of the property for the reasonable amount of time required to obtain a suitable replacement. *Howells Elevator, Inc. v. Stanco Farm Supply Co., Inc.*, 235 Neb. 456, 455 N.W.2d 777 (1990). The Nebraska Supreme Court has stated that salvage value does not tend to prove the proper measure of damages in other cases involving wrecked automobiles. See *Neill v. McGinn*, 175 Neb. 369, 122 N.W.2d 65 (1963); *Lund v. Holbrook*, 153 Neb. 706, 46 N.W.2d 130 (1951), reversed on other grounds, *Delicious Foods Co., Inc. v. Millard Warehouse, Inc.*, 244 Neb. 449, 507 N.W.2d 631 (1993). Accordingly, to the extent Marsolek's testimony reflected evidence of salvage value, it was in error.

*Motion for New Trial*.

Blankenbecler asserts that the district court erred in refusing to grant Blankenbecler's motion for new trial. Because we are reversing and remanding the cause for a new trial, we need not address this assigned error further.

## CONCLUSION

The district court did not abuse its discretion in denying Blankenbecler's request for sanctions. However, the admission of exhibits 8 and 9 was prejudicial error. We reverse the judgment of the district court and remand the cause for a new trial.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.